be taken under advisement. We'll now move on to the sixth case of the day, United States against Zan Morgan, Appeal 18-2671, and we'll expect to hear again from Ms. Christensen. May it please the Court. Again, I am Joanna Christensen. This time I represent Mr. Mr. Morgan was convicted of being a felon in possession of a firearm. The District Court conflated the standards used in two different enhancements under the guidelines. One under 2K 2.1b6b, which I'll call 2K enhancement for ease, and the other one under 2D 1.1b1. These two enhancements are different levels. The 2K enhancement is four levels, the 2D enhancement is two levels, and they have very different standards for which the court needs to evaluate in order to apply them. The four level enhancement requires that the court find that the defendant possess a firearm in connection with another felony that facilitated the other felony, and when a drug case, the gun is in close proximity to the drugs or the drug evidence. 2D has a lower standard. It merely requires that the gun be present during a drug crime, and then the burden shifts to the defendant to show that it is clearly improbable that the firearm was connected with the offense. This burden shifting is where the error lies in this case because the District Court, while using both standards during its findings, both orally and written, it also uses the 2D standards, which tilt toward an enhancement, and the court says that several times, that there's a presumption in this case, and that of course would lead the defendant to need to prove that it was not, it was clearly improbable that the gun was present during the offense and involved. While the District Court may have ultimately made findings regarding 2K, because it also made findings regarding 2D, it's not clear from the record for this court to engage in a thorough appellate review exactly what supports this legal argument. Ms. Christensen, could you address the invited error argument the government has made on this point with respect to the 2D enhancement? Yes, the cases hired by the government on the invited error are both factual admissions made by a defendant. So in the one case, Johnson, the defendant made an admission about a fact in the case and then later tried to argue that the District Court should have prevented the jury from learning that fact. This is not a factual admission. No, but I mean invited error is a pretty broad doctrine in appellate practice, and as you know as well as anybody else, this court has had a long history of remanding sentences for failing to address defendants' arguments, and here the defendant did make an argument with respect to 2D, whether correctly or not, and if you're the district judge, you've got to address that, right? I think so. I think the court does have to address it. However, the remedy for that is not making findings under the erroneous guideline section. So yes, Defense Counsel did make arguments regarding 2D, and that was an error. It's obviously easier to prove 2D than it is to prove a 2K enhancement. I think the judge should have addressed that, but said, but that's not our standard here, counsel. Our standard is 2K, which says in connection with another felony offense, facilitates and close proximity. But that's not what the judge said. It's unclear from the judges back and forth between the two sections what exactly the judge is ruling in this case. So I'm I understand the invited error argument. I don't think it necessarily applies because of the legal standard involved, because I think the judge did have a duty to say, I can't make that finding because it's not the correct legal standard to make that finding. We do have his later writings though, correct? Correct. And while the later writing, if you do kind of a balance of 2K and 2D in just the later writing, the judge does analyze more of 2K than 2D, but does mention a couple of times the standards in 2D, particularly the firearm used for hunting, but then also says in furtherance of, which the court says several times, but is in neither 2K or 2D. It's actually commonly in a 924C case, in furtherance of. Yeah, I think that from a lay person's perspective, we're all talking about things that don't seem to matter. We seem to be talking about all the same words, because it's hard to distinguish in connection with and furtherance of facilitating. But under the guidelines, it does make a difference. It makes a two-level difference, and it also is just an incorrect application. If the court were to apply 2D to a 2K case, that would be a flat-out error, and it would have to be remanded. Isn't Judge Brennan right though, that under our court's decision in Pennington, United States versus Pennington from 2018, that the proper way to look at this is to both to look at the transcript, as you're you're rightly emphasizing, but then to look at the transcript against the backdrop as well of the statement of reasons. Isn't that the proper analytical approach? I think that certainly is the proper analytical approach. I don't think it's as open and shut, perhaps, as Pennington was. No, no, I understand that. I think, I think you're, I, you know, I understand why you're focused on the transcript, because I think there's more conflation in the transcript. When you get to the statement of reasons, you know, it's framed around 2K 1.1, and that in connection with language is used. That's what Judge Peterson uses to analyze it. That's where it gets harder for you. Oh, definitely, it does get harder. I do have a practical standpoint in that the defendant is certainly not present when the judge is writing the statement of reasons. Often, they match very closely. In this case, they don't match as closely the oral and the written, and the written can be used to explain the oral. But with the defendant not present, I think we do have to look at both in conjunction with each other, not just the written, and certainly not just the oral, which Pennington, and there are several other cases that this court holds, that, that the oral is not the end-all if there's a written statement of reasons. But without the defendant there, the defendant's, you know, unclear exactly how this enhancement applies to him. Probably, maybe not in the way that the lawyers would explain why there's a difference, but the back-and-forth language is quite difficult, particularly when the pre-sentence report makes it clear that the 2K enhancement is being assessed. But then, defense counsel admittedly is arguing different language, and the judge is also using that language to support the finding of the enhancement. Ms. Christensen, one of the issues here for some of the circumstantial evidence of drug trafficking that Judge Peterson relied upon was the amount of cash that Mr. Morgan had on two different occasions. On appeal, he's arguing he got some of that from selling pit bull puppies. Was that point raised in the district court? It was raised in the district court, Your Honor. I believe that there's a citation in my brief in the pre-sentence report. He gave that statement either to the officers or as part of the pre-sentence review. I can certainly look for it and find the exact pinpoint. I think that in my time that's left, that there is a problem with the factual basis here, regardless of the the guideline itself. Three of the items relied on by the district court, the court said, well, the timing of the compartments in the previous car, and then the cash in the previous traffic stop, but then the court also found that that offense was unrelated to this one. So we have a juxtaposition of evidence that perhaps was relevant, but the court found not relevant, but then relied on to give the enhancement. Ms. Christensen, refresh our recollection. Were there any objections to the facts in the PSR from the defense? Yes, but not on this issue particularly. He did object to the prior traffic stop being used to support any of the enhancements, which then prompted the judge to say I'm finding that prior traffic stop is unrelated. How was the heroin packaged at the time for the with the arrest with the gun? My understanding was it was in a bag. One bag? I'm not sure that's clear from the evidence. I don't think so. There were other baggies, but they had cocaine residue in them. So unless the court has further questions, I will reserve my one minute left. Thank you. Thank you very much, Ms. Christensen. And for the government, Mr. Stephan. Good morning. May it please the court, my name is Cory Stephan, and I represent the United States in this case. Here, the district court correctly applied the 2k 2.1 standard and used reliable, accurate, and application. Now the government agrees that there is a different standard between the 2d and the 2k standards that we're talking, or applications we're talking about here, but while the district court gave a thoughtful response to the defendant's argument in this case, those comments did not interfere with the end result here. The district court did not stop with those comments related to the 2d commingling, as we were kind of describing it here. The judge went on to consider what it meant for the gun to be in the close proximity, or in the same proximity to the drugs and the paraphernalia, the other items of drug use, and concluded there must be more. The district court judge analyzed what it meant for the gun to be connected with the drugs, and from there went and considered the 924c language in furtherance. I think the district court judge was struggling with the facilitate and found the in furtherance was helpful, because the in furtherance in the 924c doesn't simply rely upon the gun being there. The gun has to be in furtherance of the drug trafficking. There has to be that something more, and by the district court focusing on that something more, you can see that while there is some commingling, and I will argue that in balance, if you go out and chart it out, because I kind of did, in balance the vast majority of the district court's comments are in the 2k category. And so while the judge struggled with these issues, the main thing that he struggled with was, was it more? He struggled with the in facilitation, which is the greater burden, the greater standard of the 2k. If this were just as simple, the gun was present, the gun was there, the defendant didn't disprove otherwise, we'd be in 2d land. And we're not there, because in the balance, the district court comes and makes the ultimate conclusion at the end in this case, comes to the ultimate conclusion, that there has to be more than the thing, the gun being present at the scene. The court asked the question, was the firearm there somehow to facilitate this drug crime? Again, more than presence. And came to the conclusion, the answer is yes. The court then went through and listed and identified the factors that it was relying upon in applying the 2k 2.1, and in the end determined that it was quite probable that the firearm was indeed connected to the drug trafficking offenses, in as much as Defendant Morgan would have them have them either to protect his drug trafficking activities or the drugs themself. Does he go that far though? I mean, does he, I thought he specifically disclaimed this idea that there, that the weapons were necessarily part of the trade, and I thought he relied more on the physical location of the weapon. The physical location was important, but I think the judge also recognized the gun-drug nexus, but specifically did not rely entirely on that drug-gun nexus. So I think every step of the way, the district court here is going that one step further into the 2k world versus staying in the 2d world. And ultimately the district court concludes is that, the district court quoted, I say, I think there had to be something other than the gun itself to show that there was actually some drug crime that was facilitated. And the district court found that that standard was met here in this case. This is supported by the statement of reasons, and while the oral pronouncement governs, the statement of reasons can be used to clear up any questions. And here in the statement of reasons, the district court writes on the two paragraphs that are relevant, citing 2k 2.1, does not cite, does not mention 2d 1.1, and when appellate counsel mentioned the used for hunting, which was in one of the application notes, I believe in 2d, the used for hunting, the type of firearm, as I'm sure your honors are aware, is one of the considerations and factors also in 924 C and furtherance. What is the type of firearm? So I don't know which way where exactly that came from, but it applies in both circumstances and applies, I think, rightly to the facilitation. Mr. Stephan, in the district judge also pointed to his prior conviction. It was quite old, was it not? There were a number of prior convictions. There was a juvenile 93 possession with intent to distribute cocaine base, and 95 possession with intent to distribute cocaine base, and then a 2002 distributing a larger quantity of cocaine base, which resulted in a lengthy prison sentence in federal court that was ultimately whittled down to 10 years of total federal prison time. Mr. Morgan was released in 2011, revoked in 2014, and ultimately released in 2015. That's how you just, it was a 10-year prison term? Correct. I may have gone beyond what... No, no, no, that's all, that's where I was... And I think the point that I'm trying to make is just as, you know, when you calculate the numbers here, you kind of take into account the amount of time that somebody has spent incarcerated, where obviously they didn't have the ability due to that incarceration to commit those crimes. But so the government does put forth that there's some invited error here. This came from the defense, and I think that Judge Peterson rightfully and thoughtfully tried to address it and felt like there was a duty to address the defendant's argument. But even if the invited error is not where this court ends up going, the government's position is there was no error in terms of the application standards on the 2k 2.1. In terms of the accuracy and sufficiency of the evidence, the defendant claims eight separate, I guess, factors or facts, the first four of which pertain to the facts from the March 4th, 2017 stop. There's the heroin itself, the 2.5 grams. Now there's nothing, there was nothing there that jumped out that let the judge say, you know, these are definitely intent to deliver. And the district court, I think, agreed and almost conceded that that could be a conceivable personal use quantity, but went on and said that's not the only evidence that we have here. In other cases we often see heroin packaged in Is that consistent with what you see? I do prosecute drug cases on occasion, yes. The retail dose? It's a smaller amount, so two and a half grams is still a fairly large quantity of heroin, yes. In terms of doses. But the judge went on, considered the baggy corners of the cocaine residue in the second cell phone as being suggestive of drug trafficking, as well as the large quantity of $1,500 in cash. And the defendant can say that the pitbull, but the district court doesn't need to buy that. The district courts are permitted to choose between two permissible inferences, and the fact that the district court in this case elected to find the substantial amount of cash as an inference towards drug trafficking is within the district court's discretion, as long as it's permissible inference. And here it is. The time of the previous stop, I believe I material, it was an estimation, whether we're talking one week or five, six weeks, that's not necessarily relevant to the, or it's not fatal to the consideration of that. There's the cash found during that stop, $2,450. The court noted even greater amount. There was the compartments in the vehicle, which the court I think correctly, based upon experience, noted that it could have been opened up to store drug trafficking materials. And then the prior convictions, which I think we've addressed during this argument. So there's certainly sufficient, reliable, accurate information for the district court to apply the 2k 2.1 sentencing enhancement in this case, and frankly the government's position is even if you take off and disregard the previous stop from January 29th of 17, there's still enough based upon the March 4, 2017 stop. And while opposing counsel mentioned that the district court did find that it was unrelated, I think in terms of sentencing, the district court elected not to make the sentence concurrent with that January 29, 17 stop. It was unrelated in the sense that there was no continuation of one course of conduct, but it was related in terms of the fact that it was the same type of conduct and same type of behavior, and I think it's within that purview that I think the court was appropriately applying those facts. So unless there are further questions, the government rests upon its brief and asks to affirm in this case. All right, thank you very much Mr. Steffen. Rebuttal, Ms. Christensen? The pit bull reference is in the pre-sentence report on page 17, which is record 79. That is from the police report. Thank you. So the government attempts to couch this as the district court was addressing the defense counsel's argument and then went on to address 2K. That's simply not what happened. There's a weaving of the terms back and forth, and the government seems to be saying that because the court got more right than wrong, that we should give it to him and say, well, you got mostly right. Well, that's not our standard for review here. This is whether the guidelines were correctly calculated and applied in procedural error. The prior convictions were very old. That was one of the factors in the case, but the other factors the court found regarding the related offense, that another offense that's not really related conduct, not related conduct to the instant offense. So I'm really not sentencing you for the conduct that happened in Eau Claire, despite the fact that the court had used half of the evidence that he found for the enhancement from the Eau Claire stop, the first stop in January of 2017. Unless the court has any further questions, we'd ask to reverse and remand. All right. Again, thanks to both counsel. The case will be taken under advisement.